I believe the law said there must be extrinsic evidence of actual fraud in addition to the badges of fraud, or I would add, included in the badges of fraud, in order that the homestead exemption can be reduced by the purchase price. But the standard of review is clear error? That's what I was going to ask. So if the standard of review is clear error, where is the clear error here in the courts, to be blunt about it, that this was brought with essentially ill-gotten gains or funds that she was not entitled to? Well, the clear error is that the cases establish a measuring device. And what this case has done is decide if somebody is a rich man and because his business takes in a lot of money and he deposits a lot, but not looking at what the expenses are, what the outgo is. It wasn't measured with the right tape measure. And the judge did not evaluate all the facts, including the badges of fraud. And Collier says no particular just to tell us that you don't agree with what the judge did. You got to give us more than that to establish clear error. What can you point to that should cause us to conclude that the bankruptcy court's determination was clearly erroneous? Clear error is not the final result. Clear error is a mistake in what they did. And so just telling us it's a mistake isn't persuasive. No. Give me something that explains why the bankruptcy court was off base. Because the cases say that it's a mistake. Stop. What is a mistake? We're talking about facts here. You can't just tell me that in other cases the court decided there was error. You've got to tell me what about this case, what facts, what evidence, what in the record tells us the factual determination was clearly erroneous. It's not that the factual determination is clear error. I'm sorry. Could you just move to the center so the microphones pick you up? Not that the factual determination is clear error. It's the findings that have to be made. And so it's not clear error to say a man's a rich man because he takes in millions a month in his business. And it could be true. But you haven't done the right measure and you've made a legal error. And the legal error is I have considered the man takes in millions a month in his business and I've also considered what his expenses are. And the judge never even stated that she was looking at all the facts, for instance. So let me be more specific. The bankruptcy court found specifically that the debtor intended to hinder, delay and defraud the creditors by taking certain actions, including depositing and withdrawing from the Citibank account. That's a factual finding about intent. Why is that clearly erroneous? It's a conclusion. It describes no evidence. It does no tracing. They hired a there are pages and pages of descriptions of the evidence to to result in the finding that the debtor had the intent to defraud. So just to say that there isn't anything is is not helpful because there's a lot there about how the how these transactions occurred and when they occurred. And they sort of like a shelved of the situation. And I'm having a hard time seeing where there's clear error. Your Honor, I'm not saying that at all. But look exactly what they say. There were transfers to Montenegro. There were transfers back. There were transfers for people with strange names. There was defalcation, which means stealing money. There were all of these pages and pages. There was a trust and it's it's a sham trust because we say it's a sham trust. There were payments to for women's shoes. There were payments to clothing boutiques, nail salon, cosmetic stores, which the court observes is pretty unlikely for a priest in his 80s. That's evidence cited in the decision. And you're just telling us, oh, there's no evidence. There's no record. You got to give us something more than that. If you want us to hold that the factual finding was clearly erroneous. If we were doing technical trust, did you do the letter of the law? Fine. But what happened was there was a bank account and there was father Donnie or father Kehoney. There was a bank account. Oh, Rita opened it up in his name, I guess, to control it. Maybe she did the money in it. And we we did not go with what Mr. Pena did. This was a complete done deal. It wasn't a done deal. It was basically treated herself trying to start a deal. It was the start of a deal. Money was put in the account. They shared the account. She even lived with father Donnie, which he denies. And so that kind of was a big problem why he didn't want to go through it because he figured the archdiocese might. Mr. Smith, I guess I'll say I was impressed by your candor. You're opening brief page eight. You said that the debtor's overall behavior regarding the property was consistent with someone who was attempting to hide property from creditors, but was making major mistakes in this effort, which would have been enough. But it was also just as consistent with someone who was not thinking of creditors and exemptions at all under a clear error standard. That is the district court's choice to make which inference to draw from that evidence. The rule on that, I believe, is that. If either interest inference could be drawn, if either one could be drawn, the court actually has to take the one that points towards honesty. I cited the case. I think it was a Supreme Court case. And and that makes sense. So it's a credibility question. Well, you as you just said, the priest denied that they had shared the property. And that's that's a credibility finding, which is classically within the fact finders. And basically what they found was that the debtor bought this property with stolen funds. That's a factual. Finding and and I have yet to hear why that is implausible or improper. That's a conclusion. Who was it stolen from? The money was put in the daughter's account. Well, before there was any dispute. And Drita never denies it. A Montenegrin account in Montenegro. And before there was any dispute with that, her money, but with two with the daughter's names on it, a sort of a normal. I'm sure that helps you, because if it's put into accounts held in another name, it seems to suggest that, in fact, this is an effort by Ms. Kessler. To keep assets out of her name because they might be reached in the bankruptcy. This is me. I got to tell you, the facts here make me think I'm watching a Saturday Night Live sketch. And so to tell us, oh, no, the facts don't support. It's sort of like telling me, don't believe what your eyes are seeing. You've got to come up with more specific reasons for why we should reject the factual finding made by the bankruptcy court. Ten people saw somebody do a 30 foot long jump in and at the end of the pit. And they said, no, the guy didn't. He doesn't get any credit for it. Was that clear as day? He didn't get credit for it. He shouldn't have. You'll have testimony from the 10 witnesses saying what they would not get. Point me to something similar to that on behalf of your client. I haven't seen anything other than your client insisting, oh, I didn't mean to cheat anybody. On that analogy. The mistake would be he doesn't get a word record, he doesn't get anything, he gets zero because it wasn't measured. It's the same thing here. There's a lot of cases that uphold inheritance. Yes. Before the dispute arose, we put money and we put it in the kids account so that when we finally died, they would have it. Then the disputes arises. That's a legitimate inheritance. It had another meaning. And I cited cases in my brief where that was fine. How does that make the assets where you're insisting that were actually hers? She put into her kids accounts. But if they're hers, then they're within the reach of the bankruptcy court. And they were. And the bankruptcy court is free to conclude. Well, this effort to put them in somebody else's name, her kids, Father Kahane, anybody else. That's an attempt to keep them away from her creditors. That seems pretty consistent. They are in the reach, Your Honor. And they went into the bankruptcy court and the judge herself said you can claim a home state. You have an equitable interest. You've never denied it's your money. Yes, of course. They went in. We're not denying it. The question is now, does she get an exemption? An exemption that she never denied was property of the state. And we say she gets an exemption because this is if she acquired the property for which she's claiming an exemption from funds that were within the reach of the estate. I'm having trouble understanding where it is that she's been shorted. She's not been shorted. There's there's nothing no problem with that. The funds were within the reach of the estate. Anything she buys is within the reach of the estate. She's not denying it. She never denied it. The judge didn't deny it. She says you have an equitable interest. Whatever money you put in is an interest you can fight to protect on a homestead. So there's no no question. And she's simply saying, OK, I want the homestead. See, this is a bit of an odd statute. I think it happened because O.J. went to Florida. And so, you know, they had to make something special. But they absolutely cases say you can file a bankruptcy and, you know, it'll harm creditors. You can even pay three years back IRS debt, $100,000 in non-exempt money. I'll pay off the IRS right before the bankruptcy. And that way I'll get rid of a debt that would survive. And I'll harm all the unsecured creditors because they won't get sort of like a preference. And that doesn't mean you don't get 523, 522-0. So we're not we're not talking about any facts. And, yes, there were pages and pages. But if you go through the pages, practically all of them were findings that Mr. Park, it's a 20, 40 page or 28 page minute or oldest findings. And Mr. Park said this and Mr. Park said that. And Mr. Park said that. Yes. Mr. Park did say that. But, no, you have to find it. And when Mr. Park was said or were no descriptions of property, no tracing, he would say it's a sham trust. And and it went to a person in Slovenia. Oh, my God, Slovenia. That really must be hiding money. But that's where the family's from. So, yes, there was a clear error. They have a measuring device. They didn't use the measuring device. No one described any facts. No one described any property permanently put out of the reach of creditors. You and I are not reading the same bankruptcy court order because I see lots of recitation there to support the conclusion. And all you're telling me is that you disagree. No one can say anything except the conclusions. They can't repeat a fact. They can make all they can. You can read it and you can say, yeah, this conclusion was made in that. It was what fact this man named Gorka or something like that. Seven thousand dollars. Pretty mysterious. Why did he get it? What did he pay for it? This was simply the way they do things in Montenegro is they buy stuff as a family. And and they they said that the funds where they use the term. Miss Kessler says that. She purchased the Aldea property from father. Cahane father Cahane says I never sold my property to Miss Kessler. The bankruptcy court concluded that his testimony was credible and hers was not. You need to persuade us that that was a clearly erroneous finding. And what have you offered other than insisting that the bankruptcy court messed up? He did. He didn't sell Aldea to her. No question. He didn't sell it to her. It was it didn't go through. And Aldea is not the property that people are calling exempt. The property is Texahoma. It was bought. Your client said that she received a deed transferring that property, me and my two daughters. And you're now saying there's no question that wasn't really true. So why shouldn't the bankruptcy court be sustained in saying your client's not very credible? She's given multiple stories. You're denying one of them. She's hard to say. It's clearly erroneous. And father Donnie said that he didn't sign an offer of purchase in front of a notary, which he did. So but the fact is, this was not they all thought maybe it wasn't a sale. It was Greta was trying to start something that would end up in a sale and it just did not go through. And they kind of don't even need they spent all their time on that. They spent a lot of time on the 12, 15 days, which you don't need when it's in the same state. And so because of that, they pay no attention to 523. But thank you, Mr. Smith. We'll give you a minute for rebuttal. You're out of time. Mr. Park. Good morning, Your Honor. My name is Nathan Park. I'm here on behalf of travelers. I will be brief and I will only make just a handful of points and I'll be happy to answer any questions that your honors may have. First point I would raise is the fact that I just want to address Mr. Smith's point that Miss Kessler has been forthright during the bankruptcy process. I apologize. I want to address the fact I want to address the point by Mr. Smith and Miss Kessler has been forthright during the bankruptcy process. I just want to point out the fact that the record makes it rather clear that travelers, after getting the judgment, conducted post judgment discovery by sending subpoenas to financial institutions and the information that travelers receive established a pattern of fraud of concealing of concealing assets such that travelers filed a verified complaint alleging fraudulent transfer. Shortly after that complaint was filed and served. That's when Miss Kessler filed for bankruptcy and then also claim for the homestead exemption. So she whatever admission that Miss Kessler made in bankruptcy was bounded by the fact that she was facing a fraudulent transfer action that is verified and supported by supported by business records and other records from the financial institutions. The second point I would make is this. In this in this appeal Miss Kessler seems to be making the argument that all of this was a legitimate exemption planning pre bankruptcy. This was not that narrative was not presented before the bankruptcy court. As your honors have noted the multiple rounds of briefing that took place at the bankruptcy court was entirely centered around whether or not it is true that Miss Kessler bought this property then use that money to tax home property. There was never this this narrative of fact that this was a legitimate exemption planning was never before Judge Kaufman. So it's not even so much that there were two plausible factual narratives and Judge Kaufman chose one. The argument by Miss Kessler is that Judge Kaufman erred by erred by by choosing by not considering a factual narrative that was not even presented to her. And I believe that that just cannot stand in the clarinet clearly erroneous standard to two more small points. There were I guess on that on that point the bankruptcy court relied on California law as to the badges of fraud in terms of deciding whether there was clear error or not. Are we compelled to use that lens or can we bottom this just on the ultimate finding that there was intent. In other words I'm not sure whether or not state law. It may be helpful but I'm not sure whether it was required here. What's your take on that. Yes Your Honor. The standard for bankruptcy court in assessing the assessing whether or not there is a homestead exemption is sufficient facts and and badges of fraud gives guidance as to what whether whether or not those factors sufficient. So my so my understanding of the law is that it is a it is a guiding principle. So two small two small points and I will be finished and I'll be happy to answer questions. There were a few evidentiary objections that were raised by Miss Kessler about for example the internal memorandum received received from Morgan Stanley that travelers receiving the part of the post judgment post judgment discovery. That evidence that evidence Your Honor was admitted in bankruptcy without objection. It was not it was not preserved for this appeal which means that it is to be assessed under plain error. And that that piece of evidence Your Honor is business record that Morgan Stanley kept in its ordinary course of business. It is also a it is also a party admission to the party admission to adverse interest because the declarant in that memorandum is Miss Kessler herself. And the final point is I believe Miss Smith Mr. Smith just made that argument in his oral argument as well as several times in his brief that when there are two competing factual narratives the court is compelled to choose the lean to the side of honesty that I don't believe is a correct statement of the law. It is based on a Second Circuit case called Kellison. And when you review the actual Kellison opinion the opinion does not say anything of that sort. That is actually in the foot the full quotation of that record of that case at the Second Circuit is that the appellant in that case made that argument as in there were two competing cases and there should be the court should lean towards the expanded explanation of honesty. And the immediate Second Circuit language that follows that argument is we disagree. That is not the holding that concludes my oral argument. Your Honor I'd be happy to answer questions. Colleagues have any questions. No thank you. All right. Thank you Mr. Park. Thanks for joining us today. Thank you. Pool was the word I was trying to find. And that's what I was always called a pooled money which goes hand in hands with it being family money that she's using for a family purpose because how much of her money was in the pool. And Mr. Park did just what has been done throughout this case. We had 30 subpoenas. We found a lot of evidence. We everyone reviewed the evidence. It was clear. Tons of evidence. Yes. If you have a lot of evidence and lots of evidence and it all supports you then you win. But you can't just say that you have it. You have to describe it. No tracing at all. No saying no defalcations. He stole it. No no never happened. They don't can't say it. No saying she gave it to a man with a Montenegrin name and he didn't get a fair amount back or there wasn't a good reason convoluted. They call it Byzantine sham. All their words. Judge follows him quotes Mr. Park and yet never gets down to saying this was transferred and was put out of the reach of creditors. No money was ever nothing was ever put out of the reach of creditors. And the way to tell actual fraud from that you'd have to have someone lying about what the money who owned the money. She always said it was her money. It wasn't money. It was at the meeting. Oh she admitted it was her money. No she never denied it was her money. Thank you. Thank you Mr. Smith. All right. The case is submitted.
judges: GRABER, CLIFTON, JOHNSTONE